Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York                                   7:19-cv-05216

| | |
|---|---|
| Brian Lanouette, Jane Doe, individually and on behalf of all others similarly situated<br><br>                            Plaintiffs<br><br>          - against -<br><br>Retrieval-Masters Creditors Bureau, Inc., Optum360, LLC and Quest Diagnostics Incorporated<br><br>                         Defendants | Complaint |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Retrieval-Masters Creditors Bureau, Inc., Optum360, LLC and Quest Diagnostics Incorporated ("defendant") obtained and maintained personal and financial data from plaintiff and class members through defendant Quest Diagnostics' role as the leading medical laboratory services provider in the country and world, which in turn contracted with Retrieval Masters Credit Bureau Inc. (RMCB) d/b/a American Medical Collection Agency and Optum360 to obtain payment from plaintiff and class members when insurance services did not render full payment.

2.      Defendant Quest solicited and promoted its Products and Services to plaintiff and class members through multimedia campaigns, direct to consumer promotions and partnerships with the largest medical insurance and healthcare providers to maintain its status as the leading laboratory services firm that Americans feel comfortable with.

3.      The personal, financial and bank account information of plaintiffs and class members was recently revealed as being compromised from approximately August 2018 to March 2019.

4.      The personal information was disclosed due to the actions of RMCB, who subcontracted for Optum360, who in turn, subcontracted for Quest Diagnostics.

5.      Though this personal information was unlawfully obtained last year, and defendants became aware of it at least two months ago, defendants only informed plaintiff and class members of this recently – the lag in time being crucial when it comes to tightening up potentially compromised data against intrusions.

6.      While it is uncertain whether plaintiff and class members' sensitive and HIPAA-protected medical information was compromised, the fact that the breach occurred and that cybercriminals obtained account information of plaintiffs and class members makes it likely that private medical information will or has been disclosed already on the "dark web."

7.      By cross-referencing the charges imposed on plaintiffs and class members and the frequency with which they occurred, with defendant Quest Diagnostics' publicly available fee schedules, cyber criminals will not have to expend much effort to know, with high probabilities, which tests were performed on plaintiffs and class members.

8.      By matching the charges with tests for rare genetic disorders, diabetes or more serious conditions, the medical information of plaintiffs and class members may end up for sale in the darkest corners of the Internet and used for nefarious purposes.

9.      These consequences are in addition to the hours required to recover from a data breach, including but not limited to cancelling credit cards, opening new bank accounts, reversing fraudulently imposed charges, and higher interest rates due to the inevitable decline in credit score when plaintiffs and class members reasonably do not pay for items and services they did not

purchase.

10.     Plaintiffs and class members did not have a choice to use defendant Quest's services, since it is the largest lab services provider in the country and often the only provider in many areas.

11.     By failing to implement third-party safeguards and quality-control mechanisms, defendant Quest enabled data thieves to pilfer the account records of persons who used their services, at the directions of their medical providers.

12.      This failing was due to strict requirements that defendant Quest select the billing providers that committed to the lowest cost for servicing accounts.

13.     However, the lowest cost to defendant Quest has resulted in a higher cost being imposed on plaintiff and class members.

14.     Defendants are jointly and severally liable for all consequences of the data breach incident ("DBI").

15.     Defendant Quest retained, supervised, controlled, directed and authorized all actions of defendants Optum and RMCB which resulted in plaintiff and class members' personal information being compromised.

16.     Reports have indicated that if defendants took reasonable, industry-standard steps and followed "best practices," either this DBI would not have occurred or it would not have lasted as long as it did, and the harms to plaintiff and class members would have been mitigated.

17.     If Defendants had done these tasks, it is more likely than not that the breach would have not occurred, or at least, its effect would have been minimized.

18.     Plaintiffs and class members have and will endure loss of use of and access to bank and credit card accounts which will snowball to the inability to make required payments on rent, mortgages, cars and utilities.

Jurisdiction and Venue

19.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

20.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

21.    This court has personal jurisdiction over defendants because they conduct and transact business, contract to supply and supply goods within New York.

22.    Venue is proper because the defendant identified as responsible for the DBI, RMCB d/b/a American Medical Collection Agency, has its main offices in this district, and defendant Quest has provided services to, based on estimates, a larger percentage of the population in this venue than other venues.

23.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

24.    Plaintiff is a citizen of Hillsborough County, New Hampshire.

25.    John and Jane Doe plaintiffs are citizens of the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

26.    John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

27.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

28.    Named plaintiff utilized the services of defendant Quest during the relevant period and upon information and belief his or her personal financial data was transmitted in the course of business from Quest to Optum360 and RMCB.

29.     Defendant Retrieval-Masters Creditors Bureau, Inc., is a Florida corporation with a principal place of business in Elmsford, New York.

30.     Defendant Optum360, LLC is a Delaware limited liability company with a principal place of business in Eden Prairie, Minnesota, and upon information and belief, at least one member of defendant is a citizen of New York State.

31.     Defendant Quest Diagnostics Incorporated in a Delaware corporation with a principal place of business in Secaucus, New Jersey.

32.     During the class period, plaintiffs obtained services provided by defendant Quest for which they provided their personal financial information related to medical or laboratory services, and that information was transmitted to defendants Optum360 and RMCB.

33.     During the relevant period, and specifically, recently, named plaintiff experienced unauthorized attempts to utilize his or her credit for purchase of consumer and durable goods, and his or her credit report was subjected to hard and/or soft credit checks in connection with such attempted purchases.

34.     Plaintiffs and class members would consider utilizing the services of defendant Quest in the future if there were assurances it would safeguard their data by using industry standard best practices.

35.     Plaintiffs and class members often do not have a choice to use the services of defendant Quest because it has a virtual monopoly over medical and lab testing services in most regions of the country, and other lab providers do not take their health insurance.

## Class Allegations

36.     The classes will consist of all consumers in the following states: all, New Hampshire, Connecticut, New York, Illinois, North Carolina, Ohio, Massachusetts, Vermont,

California, who obtained medical laboratory services from defendant Quest during the statutes of limitation and whose information was transmitted to defendants RMCB and Optum.

37.   A class action is superior to other methods for fair and efficient adjudication.

38.   The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely tens of millions of members.

39.   Common questions of law or fact predominate and include whether plaintiffs' and class members' personal financial data was compromised, causing them harm, and if defendants took reasonable measures to prevent or mitigate the harm, and whether plaintiffs and class members are entitled to damages.

40.   Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

41.   Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

42.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

43.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

44.   Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

45.   Plaintiff(s) seeks class-wide injunctive relief because the practices continue and plaintiffs do not have any alternatives to using defendant Quest's lab services because there are no other options which are geographically accessible to many plaintiffs and who accept their health insurance.

Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen Stat § 42-110a, *et. seq.*, New York General Business Law ("GBL") §§ 349 & 350, California Consumers Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA") and Consumer Protection Statutes of Other States and Territories

46.  Plaintiff re-alleges the paragraphs above.

47.  Plaintiffs and John and Jane Doe plaintiffs, representing 49 other states where they reside and received and/or purchased the Services or Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
e.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
f.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
g.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
i.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;
j.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
l.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
n.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
q.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;
s.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;
u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
cc. New York General Business Law ("GBL") §§ 349 & 350;
dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;
jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;
kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;
ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;
mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;
nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;
oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

48.    Named plaintiff asserts causes of action under New Hampshire Consumer Protection

Act, N.H. Rev. Stat. § 358-A:1, et. seq.;

49.    Jane Doe plaintiffs assert causes of action under the laws of the other 49 states,

including the New York General Business Law §§ 349-350 and California Consumers Legal

Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

50.    Defendant's acts, practices, representations and omissions related to their adherence

to data protection practices that purportedly would safeguard the information of plaintiff and class

members are not unique to the parties and have a broader impact on the public.

51.    Plaintiffs and class members were directed by their medical providers to receive lab

services and directed to use defendant Quest, with the assurances their private data would not be

disclosed to unauthorized persons and that best practices would be employed to prevent or mitigate

such disclosure.

52.     After mailing appropriate notice and demand Jane Doe California Plaintiff will have mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

53.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

54.     Defendant violated the consumer protection laws of the states indicated.

55.     The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

Breach of Contract

56.     Plaintiff re-alleges the paragraphs above.

57.     Plaintiff and Class members entered into a contract with Defendants for the provision of laboratory or other related medical and diagnostic services and were given assurances in the form of defendant Quest's code of conduct and terms of services that industry-standard, reasonable and practical measures would be taken, at all steps – intake, testing, billing etc. – that their private data would be protected.

58.     The terms of defendants' privacy policy are part of the contract.

59.     Plaintiff and Class members performed substantially all required of them under their contract with defendants, or they were excused from doing so.

60.     Defendants failed to perform its obligations under the contract, including by failing to provide adequate privacy, security, and confidentiality safeguards for Plaintiff's and Class member's information and documents.

61.     As a direct and proximate result of defendants breach of contract, Plaintiff and Class

members did not get what they expected – laboratory services which protected their sensitive

personal data, and instead received laboratory services that were less valuable than described to

them because the terms did not disclose defendants would fail to comply with safeguarding their

data.

62.     Plaintiff and Class members were damaged in an amount at least equal to the

difference in value between that which was promised and Defendants' deficient performance.

63.     Also as a result of Defendants' breach of contract, Plaintiff and Class members have

suffered actual damages resulting from the exposure of their personal information, and they remain

at risk of suffering additional damages.

64.     Accordingly, Plaintiff and Class members have been injured by Defendants' breach

of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

Negligence and Negligence Per Se

(all classes)

65.     Plaintiff incorporates by references all preceding paragraphs.

66.     Defendants violated NH Rev Stat § 359-C:20 and N.Y. Gen. Bus. Law § 899-aa by

failing to properly disclose the data breach.

67.     Class members are within the class of persons that the aforesaid laws were intended

to protect because they are residents of these states.

68.     The harm which occurred due to Defendants' Data Breach is the type of harm that

these laws were intended to protect.

69.     Specifically, this is the harm of the unauthorized access or disclosure of personal

information due to a failure to maintain reasonable security procedures.

70.     Defendants had a duty of reasonable care to safeguard the privacy, confidentiality,

10

and security of Plaintiff's and Class members' personal information and documents and comply with the terms of its own privacy policy.

71.     Defendants breached this duty of care by failing to adequately safeguard the private and confidential personal information and records of plaintiff and class members.

72.     Defendants breached their duty of care FTC Act Section 5, the Consumers Legal Remedies Act (CA) and the GLB Act.

73.     As a direct and proximate result of Defendants' breach of their duty of care, Plaintiff and the Class suffered injury.

Unjust Enrichment

74.     Plaintiff incorporates by references all preceding paragraphs.

75.     Defendants obtained benefits and monies because the Services or Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendants to correct such practices to comply with the law;

3. Injunctive relief for members of the New Hampshire and New York Subclass pursuant to their consumer protection law;

4. An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

11

5.  An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from failing to provide adequate measures to safeguard the personal information of plaintiff and class members;

6.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

7.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

8.  Such other and further relief as the Court deems just and proper.

Dated:   June 4, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

7:19-cv-05216
United States District Court
Southern District of New York

Brian Lanouette, Jane Doe individually and on behalf of all others similarly situated

Plaintiffs

- against -

Retrieval-Masters Creditors Bureau, Inc., Optum360, LLC and Quest Diagnostics Incorporated

Defendants

# Complaint

```
            Sheehan & Associates, P.C.
             505 Northern Blvd., #311
               Great Neck, NY 11021
               Tel: (516) 303-0052
               Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 4, 2019

/s/ Spencer Sheehan
Spencer Sheehan
